UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

CARLOS GOMEZ,

Defendant.

---

97-Cr-696 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Defendant Carlos Gomez brings this *pro se* motion to vacate his conviction for use of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c). (Def.'s Mot., ECF No. 350.) The U.S. Court of Appeals for the Second Circuit previously granted Gomez leave, in light of *Johnson v. United States*, 576 U.S. 591 (2015), and *United States v. Davis*, 139 S. Ct. 2319 (2019), to file a successive motion pursuant to 28 U.S.C. § 2255. (ECF No. 347.) Gomez argues that his section 924(c) conviction, which was predicated on both conspiracy to commit murder and substantive murder, cannot stand in light of the now-invalid conspiracy predicate. (*Id.* at 10.) The government opposes Gomez's motion. (Gov't Opp'n, ECF No. 352.) For the reasons set forth below, Gomez's motion is denied.

I. BACKGROUND

In the early 1980s, defendant Gomez founded the Westchester Avenue Crew ("WAC"), a Bronx-based heroin and cocaine distribution enterprise. (Presentence Investigation Report ("PSR") ¶ 70.) The organization operated until 1983, when Gomez was convicted of criminal possession of a weapon and sentenced to two-to-four years' imprisonment. (*Id.*) Gomez revived WAC in the late 1980s, and the organization flourished through the 1990s. (*Id.* ¶¶ 71-73.) WAC distributed heroin 24 hours a day, seven days a week, with a different manager assigned to cover each night shift; at its peak, the enterprise sold as much as $40,000 worth of heroin per 24-hour period. (*Id.* ¶¶ 72-73.) Gomez spent a portion of this period incarcerated pending trial on murder charges—which were eventually dropped—but he continued to manage the enterprise from jail with the assistance of his brother. (*Id.* ¶ 71.)

Under Gomez's supervision, WAC members committed several acts of violence in furtherance of their drug conspiracy. (*Id.* ¶ 85.) Relevant here is the December 1992 shooting death of Jose Gonzalez Santiago, whom Gomez believed to have killed one of his relatives the prior month. Gomez interpreted this murder as a rival gang leader's failed attempt on his own life; in response, he provided a subordinate with a firearm

and instructed him to murder Santiago. After the subordinate successfully committed the murder, Gomez paid him several thousand dollars. (*Id.* ¶¶ 86-87.)

Gomez was arrested in 1997, and he was ultimately indicted on fifteen counts arising out of his role as WAC's leader. (Indictment, ECF No. 200.) In 2000, he was found guilty after a jury trial on four of the fifteen charged offenses: (1) racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (2) RICO conspiracy in violation of 18 U.S.C. § 1962(d); (3) conspiracy to distribute narcotics in violation of 21 U.S.C. § 846; and (4) use of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c). As predicate racketeering acts, the jury found defendant liable for both the conspiracy to murder and substantive murder of Santiago, as well as for conspiracy to distribute heroin and cocaine. Defendant's section 924(c) conviction, as well, rested on the conspiracy to murder and murder of Santiago as predicate crimes of violence. (*See* Trial Tr. 4140:9-13, ECF No. 226.)

Pursuant to the then-mandatory United States Sentencing Guidelines,[1] this Court sentenced defendant to life imprisonment, followed by a required consecutive 60 months on his section 924(c) count. In 2019, defendant petitioned the Second Circuit for an order authorizing this Court to consider a second successive section 2255 motion. *See* 28 U.S.C. §§ 2244(b), 2255(h). (ECF No. 347-2.) The Second Circuit granted Gomez leave to file his motion in April 2021. (ECF No. 347.) Defendant now claims that his section 924(c) conviction is no longer valid in the wake of *Johnson* and *Davis*. Accordingly, he requests that this Court vacate that conviction and resentence him on his remaining counts. (Def.'s Mot. at 2.) Because defendant proceeds *pro se*, the Court construes his arguments liberally. *See Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001).

## II. APPLICABLE LAW

18 U.S.C. § 924(c) criminalizes, *inter alia*, the possession or use of a firearm "during and in relation to any crime of violence." *Id.* § 924(c)(1)(A). "Crime of violence," in turn, is defined by two statutory provisions. First, the "elements clause" of section 924(c) defines a crime of violence as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A). Next, the "residual clause" also includes in the definition any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B).

In *Davis*, the U.S. Supreme Court invalidated the residual clause as unconstitutionally vague. *See* 139 S. Ct. at 2336. Now, a section 924(c) conviction

---

[1] The guidelines were rendered advisory in 2005. *See United States v. Booker*, 543 U.S. 220, 226 (2005).

remains valid only if it rests on an elements-clause predicate offense—that is, if the underlying crime of violence "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A); *see United States v. Capriata*, No. 12-Cr-712 (SHS), 2021 WL 1180049, at *2 (S.D.N.Y. Mar. 29, 2021).

Determining whether a predicate crime satisfies the elements clause requires that the Court "employ what has come to be known as the 'categorical approach.'" *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). The categorical approach tasks the Court with identifying "the minimum criminal conduct necessary for conviction," *id.*, and determining whether that conduct meets the elements clause's requirements. "For this analysis, we examine only the elements of the crime of conviction; the defendant's own conduct in committing the crime is irrelevant." *Collier v. United States*, 989 F.3d 212, 220 (2d Cir. 2021). In the wake of *Davis*, courts in the Second Circuit have held that "a mere conspiracy to commit a crime of violence will ordinarily fail to qualify" as a crime of violence under the categorical approach. *United States v. Erbo*, No. 08-Cv-2881 (LAP), 2020 WL 6802946, at *3 (S.D.N.Y. Nov. 19, 2020); *see United States v. Barrett*, 937 F.3d 126, 128 (2d Cir. 2019).

Finally, where a defendant's section 924(c) conviction rests on both a valid and an invalid predicate offense, the valid predicate may sustain the conviction where it is "overwhelmingly likely that any reasonable juror would have convicted on the basis" of the valid theory of guilt. *United States v. Eldridge*, 2021 WL 2546175, at *8 (2d Cir. June 22, 2021) (quoting *United States v. Skelly*, 442 F.3d 94, 99 (2d Cir. 2006)).

## III. DISCUSSION

### A. Gomez's Section 924(c) Conviction Undoubtedly Rests on a Valid Predicate

Defendant's section 924(c) conviction rested on his conspiracy to murder and substantive murder of Jose Gonzalez Santiago in violation of New York Penal Law §§ 105.15, 125.25.[2] (Indictment ¶ 28; *see* Trial Tr. 3998:19-3999:1.) Because the jury returned a general verdict on this count, it did not specify which predicate or predicates supported its finding of guilt. (*See* Trial Tr. 4140:9-13.). Gomez argues that conspiracy to commit murder is no longer a valid predicate offense, and that it is "impossible to determine" whether the jury relied on this theory of guilt to convict him. (Def.'s Mot. at 10.)

The government does not dispute that conspiracy to commit murder is no longer a valid section 924(c) predicate offense under the elements clause. Accordingly, the

---

[2] The indictment also predicated Gomez's section 924(c) liability on conspiracy to murder in aid of racketeering, 18 U.S.C. § 1959(a)(5), and substantive murder in aid of racketeering, 18 U.S.C. § 1959(a)(1), but defendant was acquitted of those counts. (*See* Trial Tr. 4139:3-11.)

neither pecuniary gain nor establishment of position within the enterprise. It is, accordingly, "overwhelmingly likely that any reasonable juror would have convicted" Gomez on the basis of the valid murder predicate alone. *Eldridge*, 2021 WL 2546175, at *8.

### B. The Court's *Pinkerton* Charge Does Not Affect this Analysis

Defendant argues that the Court's jury instruction on *Pinkerton* liability adds a wrinkle to this analysis. A so-called *Pinkerton* charge permits, but does not require, the jury to hold a defendant "responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes." *United States v. Masotto*, 73 F.3d 1233, 1239 (2d Cir. 1996) (quotation omitted); *see Pinkerton v. United States*, 328 U.S. 640 (1946). Here, the Court issued a *Pinkerton* charge as an alternative theory by which the jury could find Gomez liable for the substantive counts in the indictment.

Gomez contends that this *Pinkerton* charge, by allowing the jury to find Gomez responsible for Santiago's murder on a co-conspirator theory of liability, undermines the Court's ability to say with confidence that defendant's section 924(c) conviction rests on a valid predicate under the elements clause. (Def.'s Mot. at 13.) Because conspiracy crimes are no longer categorical crimes of violence after *Davis*, the argument goes, a section 924(c) conviction predicated on *Pinkerton* conspiracy liability cannot stand.

There is indeed tension between the categorical approach—which asks the Court to evaluate the "minimum criminal conduct necessary for conviction," *Hill*, 890 F.3d at 55—and *Pinkerton* liability, which allows a jury to convict a defendant of substantive crimes based on his mere participation in a conspiracy. In other words, the availability of *Pinkerton* liability seems to imply that the minimum criminal conduct necessary for conviction of *any* crime, no matter how well-established as a crime of violence, would be non-violent under the elements clause.

This tension has led to some disagreement in this Circuit. The bulk of authority holds that the presence of a *Pinkerton* instruction is generally irrelevant to the section 924(c) analysis. *See United States v. Lloyd*, No. 10-Cr-0622 (JS), 2020 WL 4750241, at *11 (E.D.N.Y. Aug. 17, 2020); *Sessa v. United States*, No. 92-Cr-351 (ARR), 2020 WL 3451657, at *5 (E.D.N.Y. June 24, 2020); *Abouhalima v. United States*, No. 93-Cr-180 (LAK), 2020 WL 3318031, at *2 (S.D.N.Y. June 18, 2020); *see also United States v. Blanco*, 811 F. App'x 696, 701 n.2 (2d Cir. 2020) (holding the same in a non-precedential opinion).

In a minority view, Judge Haight invalidated two defendants' section 924(c) convictions, despite the fact that those convictions were predicated in part on substantive murders of which the defendants were independently found guilty. *See United States v. Rodriguez*, No. 94-Cr-313 (CSH), 2020 WL 1878112, at *17 (S.D.N.Y. Apr.

5

N.Y. 2d 673, 680 (1992). This argument is foreclosed by the Second Circuit's recent *en banc* ruling in *United States v. Scott*, 990 F.3d 94, 107-113 (2d Cir. 2021). There, the Second Circuit held that New York first-degree manslaughter—which requires that the defendant, intending to cause at least serious physical injury, cause the death of another—is a categorical crime of violence. *Id.* at 113. The *en banc* court rejected Scott's crime-by-omission argument, noting that where the law imposes a duty to act, an "omission" is in fact viewed as an "*action* sufficient to support criminal culpability." *Id.* at 114 (emphasis in original). Accordingly, the Court held that "New York first-degree manslaughter is a categorically violent crime . . . because—whether a defendant acts by commission or omission—the offense's causation and intent elements can be satisfied only when a defendant knowingly employs the violent force causing death as the instrument for pursuing his own seriously injurious purpose." *Id.* at 113.

This reasoning applies only more forcefully when a defendant's intent is to cause death. Indeed, in support of its conclusion, the *en banc* court in *Scott* warned that defendant's argument, if "carried to its logical—or illogical—conclusion, would preclude courts from recognizing even intentional murder [under New York Penal Law § 125.25] as a categorically violent crime." *Id.* at 100. This Court thus lands on the logical conclusion: murder in violation of New York state law is a categorical crime of violence. *Cf. Boykin*, 2020 WL 774293, at *1 ("[T]he crime of murder has always been understood to be a crime of violence—indeed, the ultimate crime of violence.").

## IV. CONCLUSION

Because defendant Gomez's section 924(c) conviction undoubtedly rests on the predicate offense of substantive murder, and because murder in violation of New York Penal Law § 125.25(1) is a categorical crime of violence, defendant's successive section 2255 motion is denied. The Clerk of Court shall mail a copy of this order to Mr. Carlos Gomez [41128-054] USP Tucson, U.S. Penitentiary, P.O. Box 24550, Tucson, AZ 85735.

Dated: New York, New York
August 16, 2021

SO ORDERED:

Sidney H. Stein, U.S.D.J.